UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE LAGREER ALLEN,

        Petitioner,

v.

Case No. 1:06-cv-241
Hon. Janet T. Neff

CINDI S. CURTIN,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

This case arises from petitioner's attempt to shoot Rudolph Bradley ("the intended victim") at a gas station. Tragically, petitioner shot and killed a different person, China Jones ("the decedent"), who was at the gas station with Eteyona Snerling ("the decedent's friend"). After a jury trial, petitioner was convicted of second-degree murder of China Jones in violation of M.C.L. § 750.317, two counts of assault with intent to murder Rudolph Bradley and Eteyona Snerling in violation of M.C.L. § 750.83, and possession of a firearm during the commission of a felony ("felony firearm"), M.C.L. § 750.227b. *See People v. Maurice Legreer Allen*, No. 252379 (Mich. App. March 24, 2005), slip op. at 1. Petitioner was sentenced to a term of thirty-one years and three months to sixty years in prison for the second-degree murder conviction, twenty-three years and nine months to fifty years in prison for each assault with intent to murder conviction, and two years in prisoner for the felony firearm conviction. *Id.*

Petitioner, through counsel, presented three issues on appeal:

I. Did the prosecutor fail to present sufficient evidence of murder and are [petitioner's] convictions a violation of due process? US Const Am V, XIV; Mich Const Art 1, Sec 17.

II. Was the evidence insufficient to support the convictions of assault with intent to murder ["AWIM"], denying [petitioner] due process of law, and did the trial court fail to instruct on AWIM with respect to victim Eteyona Snerling; must the AWIM convictions be vacated? US Const Am XIV; Mich Const Art I, Sec 17.

III. Was [petitioner] denied his right to a fair trial before an impartial judge by an impartial jury? US Const Am VI, XIV; Mich Const Art I, Sec 17, 20.

Brief on Appeal (docket no. 24).

The Michigan Court of Appeals affirmed the conviction. *People v. Maurice Legreer Allen*, No. 252379. Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Maurice Lagreer Allen*, No. 128473 (Dec. 5, 2005). Petitioner raised the same three issues in his amended habeas petition. *See* docket no. 4.

## II. Procedurally defaulted claim

Respondent contends that Issue III is barred from habeas review under the procedural default doctrine. The court agrees. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and

2

sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The Michigan Court of Appeals performed only a "plain error" review of Issue III because petitioner failed to properly preserve this issue for appellate review:

> Defendant's next issue on appeal is that the trial court erred when it reprimanded defense counsel and inappropriately questioned defendant. Because defendant did not object at trial these issues are unpreserved and accordingly the defendant must show that plain error occurred which affected his substantial rights. This Court should only reverse a ruling if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v. Carines*, 460 Mich. 750, 774; 597 NW2d 130 (1999). A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity. In addition, conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone. A judge should avoid interruptions of counsel in their arguments except to clarify in his mind their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment. *People v. Conyers*, 194 Mich. App 395, 397; 487 NW2d 787 (1992). In addition, a trial court may question a witness in order to clarify testimony or elicit additional relevant information. *Id.* at 404. The court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. A trial court may not assume the prosecutor's role with advantages unavailable to the prosecution. *People v. Weathersby*, 204 Mich. App 98, 109; 514 NW2d 493 (1994). The test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the jury's mind about a witness's credibility or whether the judge's partiality may have influenced the jury to the detriment of the defendant's case. *Conyers*, *supra* at 405.

3

The trial court made the following comments to defense counsel:

> "Mr. Cook [defense counsel], do you want Mr. Cripps [codefendant's defense counsel] to go first and maybe get organized cause you're taking a real long time between questions and I don't know if you're thrown off by her testimony. You had all lunch to prepare for cross examination and you act like you're so surprised by what's going on right now. Do you need more time to collect your thoughts?"

The trial court also instructed defense counsel on the proper way to use the preliminary examination transcript to cross-examine a witness. When defense counsel failed to comply, the trial court commented on this failure and asked defense counsel if there was a "problem." Defendant contends that the trial court disparaged defense counsel in front of the jury and suggested that defense counsel was unorganized, ill prepared, and ignorant of the proper trial procedures, and that this denied him a fair trial. However, it is apparent from the record that the trial court was attempting to avoid any waste of time by instructing defense counsel on the proper way to impeach a witness with prior testimony. Otherwise, defense counsel would have improperly attempted to impeach the witness, further delaying the cross-examination process. The trial court was seemingly offering defense counsel more time to prepare his cross-examination because of the lengthy delay in questions asked the witness. Therefore, we conclude that the trial court's comments did not amount to error resulting in the miscarriage of justice.

We do find error in the trial court's examination of defendant. Following defendant's direct testimony and cross-examination, the trial court asked defendant a series of questions. Defendant contends that the trial court was acting as a second prosecutor when it effectively impeached defendant's trial testimony. While we do not share defendant's characterization of the trial court's questioning of defendant, we do find that the trial court went beyond attempting to clarify defendant's testimony and came perilously close to cross-examination of the defendant. While we are not unmindful of the fact that the remarks of a trial court judge weigh heavy in the minds of jurors, *People v. King*, 384 Mich. 310, 315; 181 NW2d 916 (1970), we cannot conclude from the record any indication that the trial court's questioning of defendant influenced the jury to the detriment of defendant's case. Furthermore, defendant has failed to demonstrate that any purported error was outcome determinative. The record indicates that several witnesses identified defendant as the shooter. A witness testified that he observed defendant obtain a gun from his brother. Defendant admitted that he had a weapon and shot the weapon at [the] intended victim on the day of the incident. Therefore, the trial court's questioning was not so erroneous that it would have affected the outcome of the trial.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 4-5.

Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default of these claims for purposes of federal habeas review. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save a petitioner from the procedural default of this claim. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id. See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, petitioner's Issue III is procedurally defaulted for purposes of this habeas review.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not set forth any cause for this default. Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the limited nature of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, petitioner's Issues III is procedurally barred and not subject to federal habeas review.

### III. Petitioner's remaining habeas claims

#### A. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);

*Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v.*

*Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

> **B.** **Sufficiency of the Evidence**

> **1.** **Legal standard**

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

> **2.** **First-degree murder**

Petitioner was acquitted of first-degree murder. Nevertheless, in his supporting brief, petitioner asserts that insufficient evidence exists to support a conviction for first-degree murder. Petitioner raised this issue on appeal as follows:

> Although the jury properly rejected the first-degree murder charge and found Mr. Allen guilty of second-degree murder, reversal is required because the unwarranted charge could have caused a compromise verdict between those jurors

who found that Mr. Allen was not guilty at all, or guilty of only manslaughter, and those who believed him guilty of first-degree murder. *See People v. Graves*, 458 Mich. 476 (1998).

Petitioner's Brief on Appeal at 12 (docket no. 24).

The Michigan Court of Appeals did not address the "compromise verdict" issue, but rather viewed this claim as one disputing the trial court's denial of a motion for directed verdict on the first-degree murder count:

> A review of a trial court's ruling on a directed verdict motion mandates this Court review the evidence up to the point the motion is made. *People v. Oliver*, 242 Mich. App 92, 94-95; 617 NW2d 721 (2000). Because review of a trial court's ruling on a directed verdict is similar to an insufficiency of the evidence claim, this Court's review is de novo. On review, this Court must determine whether viewing the evidence in a light most favorable to the prosecution, a rational trier of fact, could find that the prosecution proved all of the essential elements of the crime beyond a reasonable doubt. *People v. Bulmer*, 256 Mich.App 33, 36; 662 NW2d 117 (2003).
>
> To prove first-degree premeditated murder, the prosecution must show: 1) defendant intentionally killed the victim and 2) the act of killing was deliberate and premeditated. *People v. Kelly*, 231 Mich. App 627, 642; 588 NW2d 480 (1998). The element of premeditation requires sufficient time for a defendant to take a second look at his actions. *Id.* Deliberation and premeditation may be inferred from the facts and circumstances surrounding the killing. *Id.* Because the jury cannot read a defendant's mind, minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *People v. Ortiz*, 249 Mich. App 297, 301; 642 NW2d 417 (2001). Factors that may be considered to judge premeditation include: 1) the relationship between the parties, 2) the defendant's actions before and after the crime, and 3) the circumstances of the killing itself, including the weapon used. *People v. Plummer*, 229 Mich. App 293, 300; 581 NW2d 753 (1998). Where the evidence establishes a fight and then a killing, there must be a showing of a thought process which is not disturbed by hot blood. *Id.* at 301. To establish premeditation and deliberation, the prosecution must show the existence of some time between the initial homicidal intent and the ultimate action. *People v. Gonzalez*, 468 Mich. 636, 641; 664 NW2d 159 (2003). The interval should be long enough to afford a reasonable person time to take a second look. *Id.* at 641.
>
> According to the record before us, defendant and his intended victim had a tumultuous relationship, whereby defendant was pistol-whipped by his intended victim on one occasion. In addition, the intended victim shot at defendant and his brother on another occasion. On the day of the fatal shooting, the intended victim was standing outside of his car at a gas station talking to some friends. Defendant

pulled into the gas station in a green SUV with two other men. Defendant was seated in the back seat of the vehicle. A witness noticed defendant lean forward toward his brother and noticed his brother pass defendant a handgun. The testimony then revealed that defendant exited the SUV and walked toward the gas station building. Defendant saw the intended victim "eye to eye," pulled the handgun from his waistband, and began firing in the intended victim's direction. As defendant was shooting, he began retreating to the green SUV. Defendant fired four or five shots, jumped in the SUV, and left the scene. Defendant was admittedly angry that the intended victim had "gotten the better of [him]" on two previous occasions. From the testimony gleaned from the record, a reasonable jury could find that defendant had sufficient time to plan and reconsider his actions. There was sufficient evidence present to show that defendant's actions were premeditated and deliberate. Therefore, the trial court properly denied defendant's motion for a directed verdict.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 1-2.

Petitioner's claim of insufficient evidence to support the first-degree murder charge, a charged crime of which he was acquitted, does not raise a federal habeas issue. Notwithstanding the very reasonable findings of the state appellate court, a state trial court's alleged misapplication of state law in denying a motion for directed verdict on a criminal charge of which the criminal defendant is acquitted, is not cognizable on federal habeas corpus review, even if the acquitted defendant claims that the denial of the motion for directed verdict could have led to a compromise verdict. *King v. Trippett*, 27 Fed. Appx. 506, 510 (6th Cir. 2001), citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, petitioner's claim should be denied to the extent that it is based upon the trial court's denial of his motion for directed verdict on the first-degree murder charge.

### 3. Second-degree murder

The Michigan Court of Appeals addressed petitioner's claim of insufficient evidence with respect to the second-degree murder conviction follows:

There was also sufficient evidence present to convict defendant of second-degree murder. The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442, 463-464; 579 NW2d 868 (1998). Malice is defined as the intent to kill, intent to cause great bodily harm, or the intent to do

10

an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464.

Evidence was presented that defendant was upset that the intended victim had gotten the better of him on two previous occasions. There was also evidence presented that defendant's brother passed defendant the handgun after the SUV pulled into the gas station. Defendant exited the SUV and walked toward the gas station building. When defendant saw the intended victim "eye to eye" he pulled the handgun from his waistband and began firing in the intended victim's direction. Defendant contends that he had an honest and reasonable fear that the intended victim presented a real and immediate threat to his life and safety. *People v. Daniels*, 192 Mich. App 658, 672; 482 NW2d 176 (1991). However, it is not within the province of this Court to interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v. Wolfe*, 440 Mich. 508, 514; 489 NW2d 748 (1992). As indicated in the record, defendant exited his vehicle and approached Bradley. Therefore, self-defense cannot be claimed where defendant was the initial aggressor. A reasonable jury could conclude that defendant was not firing the weapon in self-defense, but rather, fired the weapon maliciously without justification or excuse.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 2-3.

Viewing the evidence in the light most favorable to the prosecution, the court concludes that the government presented sufficient evidence to convict petitioner. The state appellate court's opinion demonstrates an adequate factual basis to support the conviction. Furthermore, petitioner admitted conduct that met the statutory requirement of second-degree murder. Petitioner testified that before the he felt "terrorized" by Rudolph Bradley, his intended victim. Trial Trans. (Oct. 2, 2003) at 6-9. He started carrying a 9mm pistol on February 14, 2003, after Bradley pistol whipped him. *Id.* at 6-9, 15-16. Petitioner carried the pistol at various times for more than one month prior to the March 16, 2003 shooting. *Id.* at 15-17. Petitioner admitted that he hated Bradley for beating him with a pistol, but never contacted the police. *Id.* at 17-18.

Petitioner made a conscious effort to arm himself and to load the pistol on the day of the shooting, March 16th. *Id.* at 19-20. On direct examination, petitioner testified that on that day he "got out of the car and walked up to the store about to grab some blunts" when he noticed

11

Bradley "reaching for his heater." *Id.* at 11. Petitioner further testified that "I just grabbed my gun and shot and was running back to the truck scared for my life." *Id.* After the shooting he got into his vehicle and went to Indiana. *Id.* at 12. On cross-examination, petitioner admitted that he was angry at Bradley, pulled out his pistol, started shooting, fired five shots and did not care what happened to the bullets that he was shooting. *Id.* at 25-26, 29. Petitioner was aware that there were people other than Bradley at the gas station, but did not aim the pistol or care about the fact that other people might get hurt. *Id.* at 29-30, 32. Based on this evidence, any rational trier of fact could find that petitioner committed second-degree murder by firing the pistol maliciously, without justification or excuse.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

### 4. Assault with intent to murder

The Michigan Court of Appeals addressed this claim as follows:

> Defendant's second issue on appeal is that the prosecution failed to present sufficient evidence to support both of his assault with intent to murder convictions.
> . . .
>
> The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v. Davis*, 216 Mich. App 47, 53; 549 NW2d 1 (1996). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense. The intent to kill may be proved by inference from any facts in evidence. *People v. Lawton*, 196 Mich. App 341, 350; 492 NW2d 810 (1992). Under the doctrine of transferred intent, the prosecution has to show that defendant had the requisite state of mind to kill, not that his state of mind was directed at the victims of the charged assaults. As this Court explained in *People v. Abraham*, 256 Mich. App 265, 270; 662 NW2d 836 (2003), the general intent to kill need not be directed at an identified individual or the eventual victim.

12

> When reviewing the record to determine if there was sufficient evidence to support defendant's conviction for assault with intent to murder, we review the facts in a light most favorable to the prosecution. Our review of the record demonstrates that defendant was seen in a green SUV at the gas station moments before the shooting. A witness also noticed a weapon passed from the front seat of the vehicle to defendant. Defendant walked toward the gas station building, noticed the intended victim, pulled a gun from his waistband, and began firing in the intended victim's direction. Decedent and her friend, the second assault victim, were standing outside of a vehicle located directly between defendant and the intended victim. When defendant began shooting, decedent's friend pushed decedent away and jumped in the vehicle. Decendant [sic] was struck with one of the bullets defendant shot in the intended victim's direction. After the SUV left the scene, decedent's friend got out of the vehicle and decedent told her that she had been shot.
>
> Sufficient evidence was present to show that defendant had the intention to kill the intended victim. Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person. *Lawton*, *supra* at 351. In *Lawton* this Court held that the defendant may have intended to assault one individual, however his ignorance of the presence of others made his crime no less heinous. *Lawton*, *supra* at 351.
>
> In this case, defendant's intent to assault the intended victim was sufficient to establish an assault with intent to murder decedent's friend. A reasonable jury could infer defendant intended to kill the intended victim when he discharged the handgun in his direction. His ignorance of the presence of decedent and her friend makes his crime no less heinous. Therefore, a reasonable juror could find defendant guilty of assault with intent to commit murder beyond a reasonable doubt, as to both the intended victim and decedent's friend.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 3-4.

Viewing the evidence in the light most favorable to the prosecution, the court concludes that the government presented sufficient evidence to convict petitioner of assault with intent to murder. For the reasons stated by the state appellate court, and as set forth in § III.B.3 *supra*, the court concludes that sufficient evidence existed to support petitioner's conviction of assault with intent to commit murder of both the intended victim (Rudolph Bradley) and the decedent's friend (Eteyona Snerling). The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

### 5. Inconsistent verdicts

Finally, in his supporting brief, petitioner contends that the jury's verdict convicting him of second-degree murder is inconsistent with the jury's verdict convicting him of assault with intent to commit murder. Petitioner contends that he could not be convicted of both crimes because the intent required to commit second-degree murder is not the same as the intent required to commit assault with intent to murder. Specifically, petitioner contends that assault with intent to commit murder requires a jury to find "an actual intent to kill," while second-degree murder can be based upon "a finding of lesser intent." *See* Petitioner's Brief at 18-20. The Michigan Court of Appeals addressed the issue as follows:

> Additionally, defendant argues that when the jury found defendant not guilty of first degree murder and guilty of assault with intent to murder, the jury rendered inconsistent verdicts. Defendant argues that once defendant was found not guilty of first degree murder, he must by necessity, be found not guilty of assault with intent to murder because in order to prove the latter, the State must prove that the defendant had an actual intent to kill. We disagree with defendant's analysis because embodied within the elements of second degree murder, is an intent to kill.
>
> \*   \*   \*
>
> We also disagree with defendant that convictions of second degree murder and assault with intent to murder produce inconsistent verdicts. The elements of second degree murder are: (1) death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442, 463-464; 579 NW2d 868 (1998). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464. Because the legal definition of malice encompasses an intent to kill, defendant is legally incorrect in his assertion that second degree murder does not include an intent to kill. Because second degree murder and assault with intent to commit murder have a common element, an intent to kill, defendant's argument is without merit. Therefore, we hold that convictions for both crimes do not lead to inconsistent jury verdicts.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 3, 4.

The amended petition did not raise a separate issue of an "inconsistent verdict." Rather, petitioner included these arguments as part of his insufficient evidence claim. The court views a claim of inconsistent verdicts as a distinct issue. However, even if petitioner had raised this issue in his amended petition, it is not cognizable on federal habeas review because it involves a question of state law. The Michigan Court of Appeals determined that the verdicts were consistent under Michigan law, noting that both the crime of second-degree murder and the crime of assault with intent to commit murder include the common element of an intent to kill. Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's determination of the elements of a crime defined in a state statute. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law"). A sufficiency of the evidence claim "does not invite federal habeas courts to engage in a substantive analysis of state statutory terms" or "transform[] federal habeas courts into super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See also Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994) ("[t]he essential elements of a state crime are defined by state law"); *Cox v. Maxwell*, 366 F.2d 765, 767 (6th Cir. 1966) ("[i]t is within the province of a state to define crimes and to fix the punishment therefor"). Accordingly, petitioner's claim of an inconsistent verdict should be denied.

### C. Jury Instruction

Finally, petitioner contends that the trial judge failed to instruct the jury with respect to the charge of assault with intent to murder Eteyona Snerling. The Michigan Court of Appeals addressed this issue as follows:

> Defendant contends that the trial court erred when it failed to instruct the jury on assault with intent to murder regarding decedent's friend [Eteyona Snerling]. However, the record indicates that, after the trial court read the jury instructions to the jury, defense counsel stated his satisfaction with the jury instructions read. This constitutes a waiver of appellate review. One who waives his right under a rule may not then seek appellate review of a claimed deprivation of these rights, as the waiver has extinguished any error. *People v. Carter*, 462 Mich. 206, 215; 612 NW2d 144 (2000). Even so, a review of the record indicates that the trial court's instruction on assault with intent to murder, regarding the intended victim, implied the instruction regarding decedent's friend under the doctrine of transferred intent. The trial court instructed: "in order to find defendant guilty of assault with intent to murder the jury must find that defendant intended to kill [the intended victim] ." This instruction was correct, in that the jury did have to find that fact in order to convict defendant under the doctrine of transferred intent regarding decedent's friend. Therefore, defendant's contention is without merit.

*People v. Maurice Legreer Allen*, No. 252379, slip op. at 4.

A claim that a trial court gave an improper jury instruction is not cognizable on habeas review unless a petitioner shows that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Habeas corpus relief is not warranted on the basis of an improper jury instruction simply because the instruction is undesirable, erroneous or universally condemned. *Estelle*, 502 U.S. at 72. The instruction cannot be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* The only question arising out of a federal habeas challenge to a state court's jury instruction is whether the instruction "so infused the trial with unfairness as to deny due process of law." *Id*. at 75; *Sanders v. Freeman*, 221 F.3d 846, 860 (6th

Cir.2000) (same). A habeas petitioner does not meet this burden if he fails to show that the jury instructions as given were contrary to federal law. *Sanders*, 221 F.3d at 860.

Petitioner has failed to demonstrate that these instructions were so erroneous that they "infused the trial with unfairness" and denied him due process of law. *Estelle*, 502 U.S. at 75. The Michigan Court of Appeals found that the jury instructions were sufficient under Michigan law to convict petitioner under the doctrine of transferred intent. Contrary to petitioner's claim, the trial judge gave specific instructions with respect to the elements of assault with intent to murder. Trial Trans. (Oct. 2, 2003) at 146-48. Then the judge reviewed the verdict form with the jurors, pointing out that Count III addressed "assault with intent to murder Eteyona Snerling," along with the lesser offense of "assault with intent to do great bodily harm." *Id.* at 156. The court finds no due process violation here. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

**IV.     Recommendation**

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  July 20, 2009                             /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17